**FILED**

DEC 0 6 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>vs.<br><br>ANICE D. WILLIAMS,<br><br>  Defendant. | A01-126 CR (JKS/JDR)<br><br>**RECOMMENDATION REGARDING MOTION MOTION TO VACATE § 2255**<br><br>(Docket No. 263) |

Defendant **Anice D. Williams** moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct her sentence. Docket No. 263.[1] The government filed an opposition to the amended motion to vacate, Docket No. 264. Williams filed a merit brief at Docket No. 271, and a reply requesting an evidentiary hearing. Docket

---

[1] The initial motion to vacate filed March 4, 2005 at Docket No. 253 filed pro se was superseded by an amended petition filed by Williams' court-appointed counsel on July 11, 2005 at Docket No. 263.



No. 274. Williams contends that she must be re-sentenced in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005) and its progeny. She also claims she received ineffective assistance of counsel from her trial attorney because he advised her to testify which resulted in her conviction and an enhancement of her sentence for obstruction of justice. **Upon due consideration the magistrate judge concludes that an evidentiary hearing is not required, and the motion to vacate should be denied.**

### Procedural Background

Anice Williams was indicted with co-defendants Arthur Williams, Sr; Arthur Williams, Jr; and Natalie Williams on charges of conspiracy in violation of 18 U.S.C. § 371, transferring counterfeit United States Currency knowing it to be counterfeit in violation of 18 U.S.C. § 472, and one count of transferring counterfeit United States Currency with intent that it be used as genuine, in violation of 18 U.S.C. § 473. Count 3 was dismissed pursuant to the government's request. Docket No. 141. Anice Williams' co-defendants reached plea agreements with the government prior to trial.

At a change of plea hearing scheduled for Anice Williams the court was concerned about her competency and appointed Dr. Irvin Rothrock as examining psychiatrist. Dr. Rothrock found that Williams was a malingerer and was "feigning an impaired memory hoping to avoid the legal consequences of her offenses." The case went to trial in August 2002. During the trial Williams was taken to the

emergency room complaining of pain in her side. She was discharged when the examining doctors weren't able to find anything wrong with her.

Anice Williams took the stand and testified in her own behalf. She contradicted testimony against her, denying that she knew anything about the counterfeiting. She claimed that the money was from the Shanigans' drug dealing, and that Vicki Shanigan had asked her to hold the money for her because James Shanigan was a drug addict who would squander it.[2] Anice Williams testified that she could not remember making any statements in her written confession and that she had been told by the agent that she had to sign the statement or go to jail. On August 22, 2002, after eight days of trial, the jury convicted Anice Williams of two counts of conspiracy and transferring counterfeit obligations. See Docket No. 169.

The Presentence Report, p.20, disclosed that Anice Williams was receiving Social Security Disability payments, based on a primary diagnosis of chronic obstructive pulmonary disease, with a secondary diagnosis of somatoform disorder, a psychiatric disorder in which the patient complains of multiple physical symptoms for which no physical cause can be found. The report reflected that Williams had a long medical history of claimed chronic pain and resulting prescription drug use, and suffered from advanced emphysema.

At an initial sentencing hearing held on November 21, 2002 Williams submitted assessments of three health professionals who had treated her, namely

---

[2] James and Vicki Shanigan were charged in a different case.

Kathleen Mathews, a nurse practitioner, Dr. David Chisolm, and Dr. Christy Fuller. The court heard from these witnesses and ordered a complete medical evaluation of Williams which was conducted at FMC Carswell in Fort Worth, Texas. Sentencing resumed on April 18, 2003 and the court heard testimony from a Bureau of Prisons physician who had examined Williams at FMC Carswell and concluded that while she was suffering from depression, she had no other significant mental illness.

At sentencing the court declined to depart downward based on Williams' physical condition, finding that the Bureau of Prisons could provide adequate medical care for her. Williams was then sentenced to served 41 months in prison followed by 36 months of supervised release plus a special assessment, restitution and costs for causing the transporting an incarcerated witness who declined to testify. Docket No. 223.

Williams appealed her conviction and sentence, arguing that she received ineffective assistance of counsel at trial and that the district court erred when it found that Williams sentence should be enhanced because of the loaded weapons found in her room with the proceeds of the counterfeiting scheme, and because of her role in directing the conduct of at least one of her co-conspirators. The Ninth Circuit Court of Appeals affirmed the defendant's convictions and sentence in an unpublished memorandum decision. *See* 88 Fed. Appx. 194 (9th Cir. February 17, 2004).

Williams filed a pro se § 2255 Motion to Vacate on March 4, 2005.

Docket No. 253.  Counsel was appointed to represent her.  Docket No. 257.  An Amended Motion to Vacate was filed by counsel on her behalf on July 11, 2005.  Docket No. 263.

## Discussion

### A.  Request for Re-sentencing Under Booker

Williams contends that at sentencing the court enhanced her sentence based upon factors not found by the jury at trial.  These factors include the counterfeiting devices and materials such as a computer, scanner and laser printer being found in her custody, possession of a firearm in connection with the offense, her role as supervisor/manager, and obstruction of justice by perjury through her testimony at trial.  The § 2255 Motion objects to the judicial fact-finding by a preponderance of evidence standard and that the enhancement factors were not proven to a jury beyond a reasonable doubt.  In essence, Williams argues that under the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), the Sixth Amendment guarantees her right to jury trial with respect to the enhancement factors.

In United States v. Booker, 125 S.Ct. 738 (2005), the Supreme Court held that the factual findings used to enhance the sentence under the Federal Sentencing Guidelines were required to be presented to a jury and that the remedy to this constitutional defect was to sever the provisions of the Sentence Reform Act that rendered the Guidelines mandatory.  This leaves in place an "advisory"

guidelines system and the remainder of the Sentence and Reform Act in tact.

Williams concedes that her conviction became final before Blakely was decided on June 24, 2004. Under United States v. Garcia, 210 F.3d 1058 (9th Cir. 2000) Williams' conviction became final at the expiration of the ninety (90) day period she had to petition the Supreme Court for certiorari. The Ninth Circuit affirmed the conviction on February 17, 2004. Thus, she had until May 17, 2004 to file for certiorari.

Williams argues that Booker should apply retroactively to her collateral attack on her convictions and sentence. Booker states that it applies to "all cases on direct review;" the decision makes no reference to cases on collateral review. The Ninth Circuit has decided that Blakely does not apply retroactively to convictions that became final prior to its publication. Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir. 2005). The Ninth Circuit has reasoned that while the decision announced in Booker was in fact "a new rule," see for example Beard v. Banks, 542 U.S. 406 (2004), it is not a new substantive rule as opposed to a new procedural rule. In holding that Ring v. Arizona, 536 U.S. 584 (2002) does not operate retroactively, the Supreme Court clarified that "[r]ules that allocate decision making authority in this fashion are prototypical procedural rules." Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 2523 (2004). In Schardt the Ninth Circuit applied Schriro to decide that Blakely did not announce a new substantive rule. Schardt, 414 F.3d at 1036. That rational applies also to the court's application of the Blakely rule to the federal

Guidelines. Because <u>Booker</u> announced a new procedural rule, it may operate retro-actively only if it is a watershed rule of criminal procedure. <u>Schriro</u>, 124 S.Ct at 2523. <u>Schardt</u> holds that with respect to <u>Blakely</u>, the <u>Booker</u> rule fits squarely within the court's holding that a "change in the law requiring that juries, rather than judges, make the factual findings on which a sentence is based [does] not announce a watershed rule of criminal procedure." <u>Id.</u> Thus, the binding Ninth Circuit precedent establishes that <u>Booker</u> is not retroactive and does not apply to cases on collateral review where the conviction was final as of the date of <u>Booker's</u> publication. Thus, <u>Booker</u> does not apply and Williams is not entitled to relief on her § 2255 claim that her sentence was illegally enhanced in violation of the Sixth Amendment as set out <u>Blakely v. Washington</u>, <u>supra</u>. See also <u>United States v. Susana Cruz</u>, 423 F.3d 1119 (9th Cir. 2005).

### B.   Ineffective Assistance of Counsel Claim

In this claim Williams alleges that her trial attorney, Eugene Cyrus, made errors so serious that he was not functioning adequately as "counsel" guaranteed by the Sixth Amendment. She complains about her attorney's decision to have her testify in her own defense at trial and that this decision "caused her to be charged with obstruction of justice." Docket No. 274, p.2. Williams seeks a new sentencing with different counsel.

### Standard for Effective Assistance of Counsel

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984) establishes a two prong

test for determining whether counsel has rendered constitutionally ineffective assistance of counsel. This standard applies to counsel's representation at sentencing. Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527 (2003). Essentially the defendant must show that his attorney's representation was deficient and that this deficiency was prejudicial. *Id.* at 693. The burden is upon the defendant to establish that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness." Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002). Strickland teaches that judicial scrutiny of a counsel's performance is highly deferential and the court should make every effort to eliminate the distorting effect of hindsight and to evaluate the conduct from counsel's perspective at the time. 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* To establish prejudice the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* Thus, the defendant must show more than an error that could conceivably have some effect on the outcome of the proceeding. Because the defendant must prove both deficient representation and resulting prejudice, the court may address either or both prongs in determining the motion to vacate premised on such grounds. The court need not determine whether counsel's performance was deficient if such alleged deficiency could not have

resulted in prejudice under the test.

### Counsel's Advice Regarding Whether to Testify

Williams asks this court to find that her trial attorney, Eugene Cyrus, rendered constitutionally deficient counsel when he failed to advise her of the possibility of an obstruction of justice enhancement. Williams seeks an evidentiary hearing to elicit testimony from Mr. Eugene Cyrus in accordance with a draft affidavit attached to her merit brief at Docket No. 271. Williams has submitted an "unsigned" draft affidavit of Gene Cyrus in support of her request for an evidentiary hearing. This draft affidavit states that Cyrus recommended to Williams that she testify in her own behalf at trial. According to this "affidavit" Cyrus told Williams that if she did not testify he would have "no ammunition" to defend her against the government's case and she would loose at trial. The "affidavit" anticipates that Cyrus would acknowledge at a hearing that he did not discuss with Williams or inform her about the possibility that if she testified at trial and lost the court might enhance her sentence under the Sentencing Guidelines based on obstruction of justice. Considering this "affidavit" as an offer of proof, as requested by Williams, I conclude she is not entitled to an evidentiary hearing on her ineffective assistance of counsel claim. See United States v. Cheely, 814 F.Supp. 143 (D.Ak. 1992), aff'd 36 F.2d 1439 (9th Cir. 1994).

The issue presented is whether a defense attorney may render constitutionally ineffective counsel by failing to advise his client that if she testifies

at trial and is found guilty the court at sentencing may find that she testified untruthfully and enhance her sentence. A Criminal defense attorney has a duty to prevent if possible perjured testimony by a criminal defendant. Nix v. Whiteside, 475 U.S. 157, 106 S. Ct. 988 (1986). Williams claims that her attorney, Mr. Cyrus, advised her to testify and told her she would lose the case if she did not testify. With regard to that advise it cannot be disputed that the attorney was simply performing his duties to advise his client whether to testify or not. That Williams was convicted after testifying does not render the recommendation by the attorney to testify constitutionally inept advice.

Warning a criminal defendant that testifying untruthfully could lead to a sentence enhancement for obstruction of justice is not a requirement for a trial defense attorney under the constitutional standard of effective assistance of counsel. This is particularly so where the defense attorney lacks knowledge that the defendant would commit perjury if she testified at trial. Before the defendant testified the clerk administered an oath requiring her to testify truthfully and she accepted that oath. Williams claims that her defense attorney had "an active duty" to prevent her as far as possible from perjuring herself as a witness. Williams makes no claim that she told Mr. Cyrus before testifying what she intended to say on the stand. Even if Mr. Cyrus had known that she was likely to perjury herself, a legal dispute exists concerning the lawyer's duty to allow the witness to take the stand anyway. See Alaska Professional Conduct Rule 3.3, Comment Perjury by a Criminal

Defendant, Alaska Rules of Court at 950 (2005-06 Ed.). The professional conduct rule acknowledges that lawyers should seek to persuade the client to refrain from presenting perjured testimony but this rule does not place an affirmative duty on the attorney at the risk of rendering ineffective assistance of counsel by failing to do so. That Mr. Cyrus advised Ms. Williams to testify this does not equate to asking her to perjure herself.

United States v. Day, 285 F.3d 1167 (9th Cir. 2002), relied upon by Williams is readily distinguishable. In Day the defense attorney incompetently advised the client that the client would have to go to trial in order to argue that the government engaged in "sentencing entrapment." Id. at 1169. In Day the court found that the prejudice prong had not been met.

### Effect of Defendant's Mental Health

Ms. Williams had extensive medical and mental health treatment records extending over a period of twenty years. The trial court ordered that those records be sent to FMC Carswell so that a complete evaluation of her mental and physical status could be obtained. At a status hearing held on March 20, 2003 the government acknowledged that the records had not been sent to the Federal Medical Center but argued that it made no difference because Dr. Shadduck who performed the evaluation did not need them. The court told the trial attorney that he could send any of the medical records he thought were pertinent to Dr. Shadduck.

Defense attorney Cyrus chose not to send any of the medical records

to Dr. Shadduck. Instead, Mr. Cyrus sent a one page Social Security Determination of Benefits form to Dr. Shadduck and argued that Dr. Shadduck should have considered Ms. Williams' diagnosis of "somataform D disorder" as was noted on the Determination of Benefit Forms. Dr. Shadduck and the trial court found the benefits form to be completely inconsequential. Williams argues that her attorney provided ineffective assistance of counsel in failing provide the complete medical records to Dr. Shadduck which she claims resulted in an enhanced sentence. She has not established prejudice as a result of the way her attorney handled the records presented to Dr. Shadduck.

At trial Cyrus took the position that Williams was physically and mentally impaired. The trial court was cautious and mindful of the issues presented as to the competence of Anice Williams to stand trial. She was not found incompetent after the issue was probed by evidence. There is no legal reason to conclude that Mr. Cyrus' duties regarding rendering effective assistance of counsel are somehow subjected to a higher standard because Ms. Williams now characterizes herself as a "mentally challenged client." The Strickland standard is still applicable. The defendant's proffer regarding her attorney's alleged erroneous advice about testifying at trial does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." See Strickland v. Washington, 466 U.S. 668 (1984); Murtishaw v. Woodford, 255 F.3d 926, 939, cert. denied 535 U.S. 935 (9th Cir. 2002). The proffer does not prove that defense

counsel's assistance was neither reasonable nor the result of sound trial strategy. Judicial scrutiny of a counsel's performance does not stretch to the point of relying only on hindsight to reconstruct the circumstances of the challenged conduct of defense counsel. Rather the defense attorney's performance must be evaluated from the prospect of the time in which it was rendered. Strickland, 466 U.S. at 689.

The record reflects that the evidence against Ms. Williams at trial was overwhelming and included tape recordings and photographs. Indeed, Mr. Cyrus recognized this fact when he attempted to reach a plea agreement with the government. Prior to arraignment and appointment of counsel Williams had signed a written confession and her conversations during the investigation discussing the counterfeiting activity were recorded on tape. It was not ineffective assistance of counsel to urge Williams to testify in response to a strong government case. Clearly, it was reasonable strategy for defense counsel to conclude that she needed to testify in an attempt to explain away the confession that she had made as well as to explain her taped statements surreptitiously recorded during the investigation. Her defense as elicited by Mr. Cyrus at trial offered a plausible defense and explanation for the circumstances. Ms. Williams testified that she believed that the money had come from the drug dealing activities of some of her co-conspirators (James and Vicki Shanigan), and that Vicki Shanigan had asked her hold the money for her because James Shanigan was a drug addict who would squander it. With regard to the signed statement she executed the day the search warrant was served, she stated

she could not remember making the statements in a written confession but then claimed that she had been told by the agent that she had to sign the statement or go to jail. These statements raised factual issues and issues of credibility for the jury to resolve. There is no allegation that Ms. Williams told her attorney prior to taking the stand that she intended to commit perjury. There is no claim that her testimony was fabricated by Mr. Cyrus. There is no allegation that Mr. Cyrus' advice to testify requested or implied she should testify falsely.

The "history of [Ms. Williams'] mental illness" was not such that an attorney would have rendered ineffective assistance of counsel by urging the defendant to testify at trial. There is no issue presented in the pending motion to vacate of her competency to stand trial. There is nothing inherently suspect about the defendant's mental processes that would support the defendant's claim that her attorney rendered constitutionally ineffective assistance of counsel by suggesting that she testify in her defense. Ms. Williams is incorrect that the cause of her being found to have obstructed justice was her attorney putting her on the stand. Rather, it was providing false testimony that constituted the obstruction of justice.

Ms. Williams cannot establish under the facts presented that she was prejudiced by the advice and or actions of her trial attorney regarding her testifying. It was not the decision itself to testify that was so detrimental to her defense; it was the content of what she had to say which was of her own design. Ms. Williams testimony was apparently rejected by the jury and she cannot now blame her

attorney for her decision to use false evidence. Ms. Williams has not pointed to any substantive or procedural right to which she was entitled and of which she was deprived by her attorney Mr. Cyrus. Ms. Williams cannot show under the facts relied upon that her counsel's alleged ineffectiveness prejudiced her under Strickland merely because her attorney encouraged her to take the stand and but for that advise she might not have testified and received the two point enhancement for obstructing justice.

### Right To An Evidentiary Hearing

Williams acknowledges that the court need not hold an evidentiary hearing "if the record standing alone conclusively demonstrates that a petitioner is entitled to no relief," citing United States v. Doganiere, 914 F.2d 165 (9th Cir. 1995). The court also need not grant an evidentiary hearing where the petitioner fails to allege facts that if proven, would entitle her to relief. Just because a petitioner seeks to rely upon facts outside the record, an evidentiary hearing is not warranted where those facts even if proved would not provide relief to the petitioner.

The reason that an evidentiary hearing is not warranted is not based upon the absence of Mr. Cyrus' signature to the draft affidavit. Rather, it is based upon the factual allegations asserted by Ms. Williams. These allegations even if proved do not constitute ineffective assistance of counsel. Her argument that she was entitled to be advised that if she testified the court would conclude that she

testified falsely is simply incorrect.[3]

Wherefore, Anice Williams' amended motion to vacate her sentence, Docket No. 263, should be denied. IT IS SO RECOMMENDED.

DATED this 5th day of December, 2005, at Anchorage, Alaska.

JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Tuesday, December 20, 2005**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Tuesday, December 27, 2005**. The parties shall otherwise comply with

---

[3] Defendant's Reply Brief States: "The advice Ms. Williams was entitled to was whether, if she testified, *the court* would (sic) conclude she testified falsely." P.5.

provisions of D.Ak.L.M.R. 6(a).

        Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

A01-0126--CR (JKS)  an 12/6/05

✓ G. MCCUNE
✓ J. BOTTINI (US ATTY)
  JUDGE SINGLETON